Joseph E.L. **SULLIVAN,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 93–1364.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1993.

Decided April 12, 1994.

Carl H. Stowe, Sr. (argued), Charles K. Stowe, Greenville, IL, for plaintiff-appellant.

Richard Montague (argued), Dept. of Justice, Civ. Div., Washington, DC, for defendant-appellee.

Before WOOD, Jr., ESCHBACH, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Joseph Sullivan, a prisoner at the federal penitentiary in Marion, Illinois, alleges that two federal public defenders who represented him in a parole revocation proceeding committed legal malpractice. Sullivan filed this action against David R. Freeman and James C. Delworth [1] under our diversity jurisdiction, but when the case came before another panel of this court approximately three years ago, we asked whether the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"),[2] which amended the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, might apply to Sullivan's claim.

1. Freeman is the Federal Public Defender for the Southern District of Illinois and the Eastern District of Missouri, and Delworth is a full-time attorney in Freeman's office. We refer to both as "federal public defenders."

2. Congress amended the FTCA in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), and the amendments are accordingly referred to as the "Westfall Act." In *Westfall*, the Supreme Court held that "the judicially created doctrine of official immunity does not provide absolute immunity to Government employees for torts committed in the scope of their employment." *United States v. Smith*, 499 U.S. 160, 163, 111 S.Ct. 1180, 1183, 113 L.Ed.2d 134 (1991). Yet Congress responded by amending the FTCA to provide government employees the immunity that the Court had refused to recognize in *Westfall*. *See id.; Pelletier v. Federal Home Loan Bank*, 968 F.2d 865, 875 (9th Cir.1992); H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 2–3, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5946.

*Sullivan v. Freeman,* 944 F.2d 334 (7th Cir. 1991) ("*Sullivan I* "). We reasoned that as federal public defenders, Freeman and Delworth might be considered "federal employees" under 28 U.S.C. § 2671, so that the Westfall Act would nullify Sullivan's claim against them individually and require that he instead proceed only against the United States. *Sullivan I* did not resolve this issue, however, because Freeman and Delworth had not yet notified the Attorney General of Sullivan's suit, as required by 28 U.S.C. § 2679(c), and the Attorney General had therefore not certified that they were government employees acting within the scope of their employment in representing Sullivan. *Sullivan. I,* 944 F.2d at 337. Because the Attorney General has now provided that certification, the question of the Westfall Act's application to federal public defenders is squarely presented. We hold that a federal public defender appointed pursuant to 18 U.S.C. § 3006A(g)(2)(A) is an "employee of the government" for purposes of 28 U.S.C. § 2671 and that the defender acts within the scope of that employment when representing his clients. The district court therefore properly dismissed Freeman and Delworth as defendants to Sullivan's suit and substituted the United States pursuant to 28 U.S.C. § 2679(d)(1).

## I. BACKGROUND

 This case came before the earlier panel after the district court had found Freeman and Delworth absolutely immune from any claim for damages. We disagreed with that conclusion, holding that as federal public defenders, they were not entitled to absolute immunity from a malpractice suit under either Illinois or the federal common law. *Sullivan I,* 944 F.2d at 338. Yet in remanding, we raised the possible application of the

Westfall Act, which had gone into effect shortly after Sullivan filed this suit.[3] That Act "limits the relief available to persons injured by Government employees acting within the scope of their employment." *United States v. Smith,* 499 U.S. 160, 161, 111 S.Ct. 1180, 1183, 113 L.Ed.2d 134 (1991). The Act specifically provides that an individual's remedy against the United States under the FTCA "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1); *see also Smith,* 499 U.S. at 161–62, 111 S.Ct. at 1182–83; *Sullivan I,* 944 F.2d at 335. *Sullivan I* explained that if the Westfall Act were to apply, it would extinguish Sullivan's claim against Freeman and Delworth personally and would require instead that Sullivan proceed against the United States. *Sullivan I,* 944 F.2d at 336, 338; *see also* 28 U.S.C. § 2679(d)(1);[4] *Ward v. Gordon,* 999 F.2d 1399, 1401 (9th Cir.1993). We indicated that the relevant question is whether a federal public defender is an "employee of the government" for purposes of 28 U.S.C. § 2671, and we outlined the arguments on each side. *Sullivan I,* 944 F.2d at 336–37. We stopped short of resolving the issue, however, because a condition precedent to the Act's application had not been fulfilled:

> For the Act to kick in, the employee must notify the Attorney General of the suit; the Attorney General must certify that the defendant employees were acting within the scope of their employment when the tort occurred; and, if [s]he refuses to so certify, the employees themselves must petition the district court. 28 U.S.C. §§ 2679(c), (d).

*Sullivan I,* 944 F.2d at 337; *see also Smith,* 499 U.S. at 164 n. 5, 111 S.Ct. 1184 n. 5. We thus remanded to allow the district court to

---

3. The Act became effective on November 18, 1988, and it applies to all actions pending on that date. *Smith,* 499 U.S. at 164 n. 4, 111 S.Ct. at 1184 n. 4 (citing 28 U.S.C. § 2679 historical and statutory notes); *Snodgrass v. Jones,* 957 F.2d 482, 484 n. 1 (7th Cir.1992); *Sullivan I,* 944 F.2d at 336.

4. Section 2679(d)(1) provides:
 Upon certification by the Attorney General that the defendant employee was acting within

the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references *thereto,* and the United States shall be substituted as the party defendant.

consider, in the event the Act was properly invoked, whether Freeman and Delworth could avail themselves of its protections.

On remand, the Attorney General's designee certified that Freeman and Delworth, in representing Sullivan in the parole revocation proceeding, had indeed been federal employees who were acting within the scope of their employment. The government thus moved to substitute itself as the party defendant pursuant to section 2679(d)(1). The government also maintained that the district court should dismiss the action without prejudice because Sullivan had failed to exhaust his administrative remedies as required by 28 U.S.C. §§ 2675(a) & 2679(d)(4). The district court referred the government's motions to a magistrate judge, who recommended that they be granted. The district court adopted that recommendation, concluding that a federal public defender is an "employee of the government" under the Act. The court accordingly substituted the United States as the party defendant and then dismissed the action without prejudice for Sullivan's failure to first present his claim to the appropriate federal agency. Sullivan now appeals, challenging application of the Westfall Act to his claim.

## II. DISCUSSION

### A.

■ We first consider whether a federal public defender is an "employee of the gov-ernment" for purposes of the Westfall Act, as the Act's exclusive remedy provision applies to any such employee who is "acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Section 2671 defines an "employee of the government" to include "officers or employees of any federal agency ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. The term "federal agency" includes, *inter alia*, "the executive departments [and] the judicial and legislative branches." *Id.*[5] *Sullivan I* observed that these definitions "tug[ ] in favor of classifying defenders as federal employees for tort claims purposes" (944 F.2d at 336), and the district court agreed. Whether a federal public defender is an "employee of the government" under the Westfall Act is a question of law that we review de novo. *See, e.g., Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994) (question of statutory interpretation reviewed de novo); *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.,* 8 F.3d 441, 445 (7th Cir.1993) (same).[6]

We know of no authority, other than our own decision in *Sullivan I,* that addresses whether federal public defenders are encompassed by the Westfall Act amendments to the FTCA. Yet we agree with the earlier

---

**5.** The term "federal agency" also includes "the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." *Id.* Prior to the Westfall Act amendments to the FTCA, section 2671 defined a "federal agency" to include the "executive departments" but not the "judicial and legislative branches." *See* Westfall Act, Pub.L. No. 100–694, § 3, 102 Stat. 4563, 4564 (1988); *see also* H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 5, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5948 ("Section 3 of H.R. 4612 explicitly extends the coverage of the FTCA to officers and employees of the legislative and judicial branches. The FTCA currently covers employees of the Executive Branch only"); *Sullivan I,* 944 F.2d at 335.

**6.** In *Hamrick v. Franklin,* 931 F.2d 1209 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991), we addressed whether the Attorney General's certification was even reviewable by a federal court. We concluded that it was and that a district court should review de novo whether certification was proper. 931 F.2d at 1211; *see also Snodgrass,* 957 F.2d at 485. The circuits are split on this question, although a clear majority favor our position. *See, e.g., Johnson v. Carter,* 983 F.2d 1316, 1319–20 & n. 7 (4th Cir.) (en banc) (addressing circuit split and adopting minority view), *cert. denied,* —— U.S. ——, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993). *Hamrick* involved a challenge to the Attorney General's determination that the defendants had been acting within the scope of their employment, and we said that the plaintiffs bore the burden of showing otherwise. 931 F.2d at 1211; *see also Snodgrass,* 957 F.2d at 487 n. 3. Here, Sullivan does not suggest that Freeman and Delworth had exceeded the scope of their employment, but that they were not employees of the government in the first place. This is purely a question of statutory interpretation on which neither party bears the burden of proof.

panel that the plain language of the statute suggests that they are. 944 F.2d at 335 ("Literally, federal public defenders are federal employees"). Section 2679(b)(1) applies without exception to "any employee of the Government," and section 2671, as amended by the Westfall Act, provides that officers and employees of the judicial branch are encompassed within that phrase.

■ Moreover, 18 U.S.C. § 3006A(g)(2)(A), which authorizes the appointment of Federal Public Defenders, certainly suggests that an individual holding that office is an officer or employee of the judicial branch.[7] That statute authorizes a court of appeals to appoint a Federal Public Defender to supervise the "public defender organization" for a particular judicial district or parts thereof. The court of appeals appoints the Federal Public Defender to a four-year term, but she may be removed by the court of appeals "for incompetency, misconduct in office, or neglect of duty." *Id.* The court of appeals sets the Federal Public Defender's rate of compensation by reference to the rate of the United States Attorney having a similar jurisdiction. *Id.* The Federal Public Defender, in turn, is authorized to appoint other "full-time attorneys in such number as may be approved by the court of appeals ... and other personnel in such number as may be approved by the Director of the Administrative Office of the United States Courts" ("the Director"). The compensation of these individuals also is set by reference to comparable positions in the office of the United States Attorney. *Id.* Significantly, neither the Federal Public Defender nor any attorney she appoints "may engage in the private practice of law." *Id.* Section 3006A(g)(2)(A) also requires that the Federal Public Defender submit to the Director periodic reports of the activities and financial position of her office, as well as a proposed budget. *Id.* The Director then prepares a budget for the organization and makes payments to and on behalf of the organization from that budget. *Id.* In short, the statute treats a federal public defender organization as an adjunct of the federal courts, and its budget is considered an expenditure or appropriation "necessary for the · maintenance and operation of the courts." 28 U.S.C. § 605. We therefore think it clear that a Federal Public Defender and any full-time attorneys she appoints are officers or employees of the judicial branch for purposes of section 2671. They are thus employees of the government to whom section 2679(b)(1) would apply.

Sullivan nonetheless argues that the Westfall Act should be read to exclude federal public defenders because, although they are on the government payroll, they actually owe their allegiance to the individuals they represent, rather than to the government itself. Taking his cue from the panel's discussion in *Sullivan I,* he argues that Congress could not have intended to make the government responsible for the legal malpractice of a federal public defender because the government has no control over the defender's conduct. *See Sullivan I,* 944 F.2d at 336 ("It would be odd to make the federal government answerable for the legal malpractice of federal public defenders, when the acts constituting malpractice are beyond the federal government's power to control"). Sullivan also suggests that the Supreme Court's decisions in *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), and *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), provide a basis for treating federal public defenders differently from other government employees under the FTCA.

Although Sullivan's arguments may have some intuitive appeal, they cannot be reconciled with the plain language of the Westfall Act. It is true that a "control test" had been utilized by a number of courts in considering claims against officers and employees of the judicial branch. *See, e.g., Foster v. Mac-Bride,* 521 F.2d 1304, 1305 (9th Cir.1975) (federal district judge, as "a member of the independent judiciary ... is not under the control of the United States" and is therefore not an "employee of the government");

7. *Cf. Mendrala v. Crown Mortgage Co.,* 955 F.2d 1132, 1135 (7th Cir.1992) (reviewing organization's governing statute to determine whether it is an "instrumentalit[y] or agenc[y] of the United States" for purposes of section 2671).

*Cromelin v. United States,* 177 F.2d 275, 277 (5th Cir.1949) (same), *cert. denied,* 339 U.S. 944, 70 S.Ct. 790, 94 L.Ed. 1359 (1950); *Tomalewski v. United States,* 493 F.Supp. 673, 675 (W.D.Pa.1980) (employees of the judicial branch are not "employees of the government" under the FTCA); *Foster v. Bork,* 425 F.Supp. 1318, 1319–20 (D.D.C.1977) (employees of the Supreme Court are not "employees of the government" under the FTCA); *but see United States v. LePatourel,* 571 F.2d 405, 410 (8th Cir.1978) (a federal judge performing a non-judicial function is covered by the FTCA because "neither the [FTCA] nor its legislative history gives any indication that employee control answers the question of governmental liability outside the independent contractor context"), *modified on reh'g on other grounds,* 593 F.2d 827 (8th Cir. 1979). Yet those decisions all predate the Westfall Act, which plainly extended the FTCA's reach to employees of the judicial branch. Those decisions have thus been effectively overruled, as the plain language of the Act must trump any "control test" in the context of judicial branch employees.[8] In a sense, Sullivan is asking that we create a "federal public defender exception" to the amended scope of the FTCA. But we can find nothing in the Act or in its legislative history that would support such an exception. *Cf. Smith,* 499 U.S. at 173, 111 S.Ct. at 1188–89 ("No language in § [2679(b)(1)] or elsewhere in the statute purports to restrict the phrases 'any employee of the Government,' as respondents urge, to reach only employees not protected from liability by another statute.").

Nor do the Supreme Court's decisions in *Ferri v. Ackerman* or *Polk County v. Dodson* suggest that we should accede to Sullivan's wishes. *Ferri* addressed whether an attorney appointed to represent an indigent defendant in a federal criminal trial had absolute immunity under federal law from a state malpractice claim. 444 U.S. at 194, 100 S.Ct. at 404. In concluding that he did not, the Court distinguished the role of appointed counsel from that of judges, prosecutors, and other public officers who had been accorded immunity in the past. The Court explained that, whereas appointed counsel's "principal responsibility is to serve the undivided interest of his client," a judge or a prosecutor represents the interests of society as a whole. *Id.* at 202–04, 100 S.Ct. at 409. Thus, "[t]he primary rationale for granting immunity to judges, prosecutors, and other public officers does not apply to defense counsel sued for malpractice by his own client." *Id.* at 204, 100 S.Ct. at 409. Yet despite this holding, the Court suggested that Congress may be justified at some future point in providing immunity to court-appointed defense counsel: "[W]ithout reaching any question concerning the power of Congress to create immunity, we hold that federal law does not *now* provide immunity for court-appointed counsel in a state malpractice suit brought by his former client." *Id.* at 205, 100 S.Ct. at 410 (emphasis added).[9] We believe that in the Westfall Act Congress did create immunity for federal public defenders appointed pursuant to 18 U.S.C. § 3006A(g)(2)(A) by extending the definition of an "employee of the government" to include officers and employees of the judicial branch and by making the FTCA action against the United States the plaintiff's exclusive remedy. *See Smith,* 499 U.S. at 163, 111 S.Ct. at 1187 (Westfall Act "establishes the absolute immunity for Government employees that the Court declined to recognize under the common law" in *Westfall v. Erwin* ). Sullivan has not questioned Congress' power to do so.

---

8. We have no doubt, for example, that a federal judge would now be considered an officer or employee of the judicial branch under the FTCA. Indeed, the Westfall Act specifically entitles the United States, after substitution, "to assert any defense based upon judicial or legislative immunity" that would have been available to the government employee. Westfall Act, Pub.L. No. 100–694, § 4, 102 Stat. 4563, 4564 (1988); *see also* H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 5, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5948.

9. In *Westfall v. Erwin,* the Court also observed that Congress was in the best position to determine "whether absolute immunity is warranted in a particular context," and the Court invited Congress to set "standards governing the immunity of federal employees involved in state-law tort actions." 484 U.S. at 300, 108 S.Ct. at 585–86.

In *Polk County v. Dodson,* the question was whether a public defender appointed pursuant to a county defender program had acted under "color of state law" in representing her client, so that she could be sued under 42 U.S.C. § 1983. 454 U.S. at 314, 102 S.Ct. at 447–48. In resolving this question, the Supreme Court looked to whether the public defender had exercised any powers " 'possessed by virtue of state law and made possible only because [she was] clothed with the authority of state law.' " *Id.* at 317–18, 102 S.Ct. at 449 (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)); *see also West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). As in *Ferri,* the Court emphasized that a public defender owes allegiance only to her client, and that she acts neither on behalf of nor in concert with the State. *Polk County,* 454 U.S. at 318–19, 102 S.Ct. at 499–50. Indeed, because a public defender generally acts as an adversary of the State, the Court found it "difficult to detect any color of state law" in her activities and accordingly concluded that she could not be sued under section 1983. *Id.* at 320, 102 S.Ct. at 450–51.

Although Sullivan contends that the Court's conclusion supports his position here, we would hasten to add that the Court acknowledged in *Polk County* that the public defender was *an employee of the county. Id.* 454 U.S. at 322 n. 12, 102 S.Ct. at 451–52 n. 12 ("In this case the question is whether a public defender—who is concededly an employee of the county—acted 'under color of state law' in her representation of Russell Dodson"); *see also id.* at 321, 102 S.Ct. at 451; *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 626, 111 S.Ct. 2077, 2086, 114 L.Ed.2d 660 (1991) (*Polk County* recognized "the employment relation between the public defender and the government"); *Blum v. Yaretsky,* 457 U.S. 991, 1009, 102 S.Ct. 2777,

2788, 73 L.Ed.2d 534 (1982) (public defender in *Polk County* was "employed by the State"); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18, 73 L.Ed.2d 482 (1982) (same); *cf. Thomas v. Pearl,* 998 F.2d 447, 450 (7th Cir.1993) ("*Polk County* ... is the only Supreme Court case in which a *government employee* performing tasks essential to his position was exempt from § 1983 liability" (emphasis added)), *cert. denied,* —— U.S. ——, 114 S.Ct. 688, 126 L.Ed.2d 655 (1994); *West,* 487 U.S. at 50, 108 S.Ct. at 2255–56 (same). Here, we are not concerned with whether Freeman and Delworth acted under color of state or federal law, but only with whether they are employees of the federal government. *Polk County* confirms that they are.

**B.**

Given that the plain language of the Westfall Act suggests its application to federal public defenders, Sullivan asks that we also consider the canon of statutory construction disfavoring repeals of existing legislation by implication. *See, e.g., Randall v. Loftsgaarden,* 478 U.S. 647, 661, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986). He maintains that 18 U.S.C. § 3006A(g)(3), which authorizes the Director either to indemnify or to purchase liability insurance for federal public defenders,[10] would be nullified if the Westfall Act were to apply, as public defenders would then have no need for such protections. Sullivan argues that absent an expressed congressional intention to repeal section 3006A(g)(3), the Westfall Act should not be interpreted to have that effect. *See Sullivan I,* 944 F.2d at 337 (outlining implied repeal argument).

The Supreme Court rejected an analogous argument relating to a similar statute in *Smith.* There, the plaintiffs maintained that application of the Westfall Act to their negli-

---

10. Section 3006A(g)(3) provides:

The Director of the Administrative Office of the United States Courts shall, to the extent the Director considers appropriate, provide representation for and hold harmless, or provide liability insurance for, any person who is an officer or employee of a Federal Public Defender Organization established under this subsection, or a Community Defender Organi-

zation established under this subsection which is receiving periodic sustaining grants, for money damages for injury, loss of liberty, loss of property, or personal injury or death arising from malpractice or negligence of any such officer or employee in furnishing representational services under this section while acting within the scope of that person's office or employment.

gence claim against a military physician for injuries they had sustained abroad would nullify a provision in the Gonzalez Act permitting "agency heads to indemnify or insure foreign-based military medical personnel against liability for torts committed abroad while in the scope of their employment." *Smith,* 499 U.S. at 171, 111 S.Ct. at 1187.[11] The Court rejected the plaintiffs' argument, concluding that the Westfall Act did not impliedly repeal the insurance and indemnity provision but merely added to the physician's existing Gonzalez Act protections. *Id.* at 172, 111 S.Ct. at 1188. The Court explained that because the plaintiffs' right to relief was based on state or foreign law and not on the Gonzalez Act, "no implied repeal problem arises when Congress limits th[at] right[ ]." *Id.*

Applying the *Smith* analysis here leads us to a similar conclusion. Section 3006A(g)(3) does not create Sullivan's cause of action against Freeman and Delworth. Instead, his legal malpractice action is grounded in state law. By limiting Sullivan's right to pursue that claim against Freeman and Delworth, the Westfall Act does not limit any right provided by section 3006A(g)(3). Because Congress did not create Sullivan's right to sue under state law, the rule disfavoring implied repeals is not implicated when Congress acts to limit that right. *See Smith,* 499 U.S. at 172, 111 S.Ct. at 1188. The Westfall Act's only effect, then, is to supplement the protections previously afforded to federal public defenders by section 3006A(g)(3). *Id.*

## C.

■ Having concluded that the Westfall Act applies to a malpractice claim against a federal public defender, we must consider Sullivan's argument that Freeman and Delworth waived application of the Act by failing to raise it before we did so in *Sullivan I.* Sullivan raises the issue in only a cursory fashion here, but we suggested in our previous opinion that Freeman and Delworth may have waived their Westfall Act immunity by failing to invoke it in a timely manner. 944 F.2d at 337. We explained that the waiver question was complicated, however, "by the Act's having come into existence after the suit was filed." *Id.* On remand, the district court determined that Freeman and Delworth had not waived application of the Westfall Act, and we now agree.

Section 2679(c) requires that a government employee provide to his immediate superior, "within such time after date of service or knowledge of service as determined by the Attorney General," all process and pleadings served upon him. This serves to initiate the certification procedure. The Attorney General has required federal employees to report certain types of suits "promptly." *See* 28 C.F.R. § 15.1 (suits relating to injuries caused by operation of a motor vehicle, by the provision of medical care, treatment, or investigation, by the administration of the swine flu vaccine, and by exposure to radiation). Yet this regulation does not purport to apply to claims of legal malpractice against federal public defenders. The Attorney General has not yet promulgated a regulation applicable to such claims, meaning that section 2679(c) provides no guidance as to when Freeman and Delworth were required to act in order to preserve their immunity.

Section 2679(d)(1), moreover, which applies to suits against government employees commenced in federal court, also places no limitation on the point at which the Attorney General must certify that the employee was acting within the scope of his employment. Subsection (d)(2), which applies to the removal of cases commenced in state court, is more helpful in this regard, as it permits removal, and therefore certification, "at any time before trial." 28 U.S.C. § 2679(d)(2). Because this is the Act's only temporal limitation on the certification procedure, we cannot say

---

11. That provision, 10 U.S.C. § 1089(f), is similar to section 3006A(g)(3):

The head of the agency concerned may, to the extent that the head of the agency concerned considers appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country....

that Freeman and Delworth waived their Westfall Act immunity by failing to invoke it sooner than they did. The Westfall Act did not exist when Sullivan filed this suit. Although Freeman and Delworth had ample time to raise the issue after the Act took effect, we believe it would be unfair in these circumstances to impose a deadline for section 2679(c) notice that the Act itself does not impose.

### D.

After concluding that the Westfall Act applies to claims of legal malpractice against federal public defenders, the district court dismissed Sullivan's suit because he had failed to exhaust administrative remedies pursuant to 28 U.S.C. § 2675(a). That section requires a claimant, before instituting an action against the United States in federal court, to first present his claim to the appropriate federal agency. Section 2675(a) applies even to cases in which the United States is substituted as the party defendant. 28 U.S.C. § 2679(d)(4); *see also* 28 U.S.C. § 2679(d)(5) (outlining how claimant must proceed once his federal suit is dismissed for failure to exhaust administrative remedies). We agree that because Sullivan did not first present his claim to the appropriate federal agency, the claim must be dismissed for lack of subject matter jurisdiction. *See Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011 (7th Cir.1991) (satisfaction of section 2675(a)'s exhaustion requirement is a jurisdictional prerequisite to a suit in federal court); *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991).

### III. CONCLUSION

A federal public defender appointed pursuant to 18 U.S.C. § 3006A(g)(2)(A) is an "employee of the government" for purposes of 28 U.S.C. §§ 2671 & 2679(b)(1). Sullivan's exclusive remedy for the defender's alleged malpractice is thus an action against the United States under the FTCA. The district court proceeded appropriately under the Westfall Act amendments to the FTCA when it substituted the United States as the party defendant in accordance with 28 U.S.C. § 2679(d)(1) and dismissed Sullivan's suit

without prejudice for his failure to exhaust administrative remedies.

AFFIRMED.