**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

AMEER LABEEB HASSAN,

     Plaintiff-Appellant,

v.

KIM ALLEN, Parole Supervisor,
Adult Probation and Parole, Region II,
Utah Department of Corrections;
MIKE SORENSON, Parole Officer,
Adult Probation and Parole, Region II,
Utah Department of Corrections;
JUNE HINCKLEY, Records Officer,
Utah State Prison at Draper; JOHN
DOE I, whose true name is not known,
Utah Board of Pardons,

     Defendants,

JOHN DOE II, whose true name is not
known, Editor-in-Chief, Atlanta
Journal & Constitution,

     Defendant-Appellee.

No. 97-4005
(D.C. No. 95-CV-51 B)
(D. Utah)

---

ORDER AND JUDGMENT*

---

*After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of

(continued...)

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

In this defamation case against various Utah state officials and the editor of an Atlanta newspaper, the pro se appellant has challenged the district court's decision to refuse service of process under 28 U.S.C. § 1915 and to dismiss the complaint for lack of complete diversity. Because we find that the district court erred in evaluating the diversity of citizenship of the parties, we reverse and remand.

**Background**

Ameer Labeeb Hassan filed his handwritten, twelve-page "Complaint for Personal Injury" on April 18, 1995, under the former version of 28 U.S.C. § 1915 (subsequently revised by the Prison Litigation Reform Act of 1996, Pub. L. 104-134, 110 Stat. 1321), and was given permission to proceed in forma pauperis ("IFP"). (See R., Doc. # 2, IFP Application & Order.) Hassan's complaint alleges that he "is a citizen of Utah who was paroled from the Utah State Prison (USP) at Draper on 2-11-92" and that his parole supervision subsequently was

---

*(...continued)
orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

transferred to the state of Georgia, where Hassan "was a citizen of Georgia at all times material hereto."  (See R., Doc. #1, Complt., at 2, ¶ 4.)  Hassan's complaint also alleges that he voluntarily returned to Utah in 1994 to turn himself in to Utah authorities, and he is now incarcerated in the Utah prison system.  (See id. at 2, 4, ¶¶ 4, 18.)

According to the factual allegations in Hassan's complaint, in June 1993, Hassan violated the terms of his parole, and at some later date, Utah officials issued a warrant for Hassan's arrest.  (See id. at 3, 4, ¶¶ 14, 19.)  During the week of May 15, 1994, while Hassan was still at large in violation of his parole, the Atlanta Journal & Constitution published a news item in its "Local" section under a heading "Most Wanted."  (See id. at 3, ¶ 15 & Ex. I.)  The news item was part of a regular weekly feature published by the newspaper listing "fugitives who are being sought by the FBI and thought to be in the metro area."  (See id. Ex. I.)  The first person listed in the article that week was Hassan, along with what appears to be a law enforcement mug-shot of Hassan.  (See id.).  The article described Hassan as being wanted "for alleged murder after fleeing prosecution for parole violation.  Hassan, who has previous convictions for homicide, aggravated robbery, assault, kidnapping, sodomy and theft, is considered extremely dangerous."  (See id.)

Hassan saw the newspaper item while he was still living in Atlanta, and he subsequently decided to turn himself in to authorities in Salt Lake City, Utah, which he did on May 27, 1994. (See id. at 3, 4, ¶¶ 15, 17-19.) At that time, Hassan learned he was not wanted in connection with any murder charge, but rather only for violating his parole. (See id. at 4, ¶ 19.) Furthermore, Hassan's complaint alleges that he has "never been previously convicted of aggravated robbery, kidnapping, sodomy, or theft . . . or assault, but was convicted of assault by prisoner." (See id. at 4, ¶ 22.)

On the basis of the alleged errors in the newspaper article, Hassan brought suit for slander, libel, false light, and unwarranted governmental intrusion. Hassan asserted diversity jurisdiction under 28 U.S.C. § 1332 against the unknown defendant who was editor-in-chief of the Atlanta Journal & Constitution, and federal-question jurisdiction under 28 U.S.C. § 1331 for Hassan's civil rights claims against the Utah defendants. (See id. at 2, ¶¶ 2-3.) Hassan requested total damages of $1.6 million and an injunction ordering the newspaper's editor-in-chief to publish a retraction and to submit a letter of apology to Hassan. (See id. at 9-11.)

Following the approval of his IFP status, Hassan soon filed motions for appointment of counsel and for official service of process under 28 U.S.C. § 1915. (See R., Doc. #4 & #9.) Hassan requested service on defendants Kim

- 4 -

Allen, Mike Sorenson, June Hinckley, and Joe Doe II, editor-in-chief of the Atlanta Journal & Constitution.[1]  (See R., Doc. #9, at 1.)  The district court granted official service of process against the Utah state officials but not against the editor-in-chief of the newspaper.  (See R., Doc. #10.)  When the Utah defendants filed their answers to Hassan's complaint, they requested a jury trial, and on the basis of that request, the district court granted Hassan's motion for appointed counsel.  (See R., Doc. #23.)

Hassan's appointed counsel then engaged in a series of discovery requests with the Utah defendants that subsequently developed information that indicated those defendants were not involved in the alleged defamation against Hassan.  (See R., Doc. #43, at 2.)  As a result, Hassan and the Utah defendants jointly moved to dismiss Allen, Sorenson, and Hinckley from the suit, and that motion was granted on July 1, 1996.  (See R., Doc. #44 & #46.)  At the same time, Hassan's appointed counsel renewed Hassan's request for official service of process against the editor-in-chief of the Atlanta Journal & Constitution.  (See R., Doc. #42 & #43.)

The magistrate judge to whom Hassan's case had been assigned, however, determined that in light of the dismissal of the Utah defendants "this Court no

---

[1]The record does not indicate that Hassan ever sought service against the first John Doe defendant listed in his complaint, who allegedly was an employee at the Utah State Board of Pardons.

longer has jurisdiction pursuant to 28 U.S.C. § 1332(a) . . . [because] [t]here must be complete diversity to sustain jurisdiction under § 1332." (R., Doc. #45, Report & Recommendation, at 2.) The magistrate judge recommended that the district court dismiss Hassan's suit. (See id. at 3.)

In a handwritten "Notice of Objection to Report and Recommendation of Magistrate,"[2] Hassan pointed out that the magistrate judge's decision had quoted his complaint out of context when the magistrate judge noted that Hassan "asserted that he is a citizen of Georgia. . . ." (See id. at 1; R., Doc. #48, Notice of Objection, at 1.) Hassan reiterated the allegation in his complaint that he is currently incarcerated in Utah, that he is currently a citizen of Utah, and that he was a citizen of Georgia only during "all times material" to the allegations in his complaint. (See R., Doc. #48, at 1.)

In an Order filed November 18, 1996, the district court recounted Hassan's allegations in his Complaint and then characterized Hassan's Notice of Objection as "arguing that, contrary to his complaint, he is actually now a citizen of Utah." (See R., Doc. #47, Order Adopting Report & Recommendation, at 1.) The district court went on to say that it had "conducted a de novo review of the magistrate judge's R&R, Hassan's objections, relevant pleadings on file, and applicable case

---

[2]The record provides no explanation for why Hassan's appointed counsel failed to continue to represent Hassan. The district court's docket entries show no notice of withdrawal from his appointed counsel.

law.  The Court agrees with the magistrate judge's decision in all material

respects."  (See id. at 1-2.)  The court, therefore, adopted the magistrate's report

and ordered Hassan's complaint dismissed.  (See id. at 2.)  The district court,

however, did not file a "final judgment" or any other separate document

indicating a final judgment, as required by Fed. R. Civ. P. 58.

Hassan prepared a handwritten Notice of Appeal that was dated December

20, 1996, but not actually filed in the district court until December 27, 1996.[3]

(See R., Doc. #49.)  The notice indicated that Hassan's "appeal is taken from the

entire judgment."  (See id.)

In light of the potential failure of Hassan to comply with the thirty-day

filing requirement for a notice of appeal under Fed. R. App. P. 4(a)(1), this court

noted a potential jurisdictional defect and directed Hassan to brief the issue.

Hassan's handwritten brief argues that his notice of appeal was timely because

Saturdays, Sundays, and official holidays should not be counted in the

computation of time.  (See Aplt. Br. at 3.)  The Utah defendants, even though they

are no longer parties in this case, filed their own Memorandum Brief addressing

the jurisdictional issue.  The defendants argue that our own cases, as well as cases

---

[3]Hassan's brief on appeal does not include any information as to when
Hassan submitted his Notice of Appeal to the prison mail system.  Cf. Fed. R.
App. P. 4(c) (allowing the computation of time for an appeal by a pro se inmate to
be counted from the date of mailing if the inmate provides a sworn statement as to
when he mailed the notice of appeal).

from the Ninth Circuit, suggest that this court should not dismiss Hassan's appeal because the district court's failure to file a separate final judgment means that the thirty-day clock in Rule 4(a)(1) has not yet begun to tick. (See Defs. Br. at 6.)

**Discussion**

**I. Timeliness of notice of appeal.**

Our ability to review the merits of the district court's order depends in the first instance on whether Hassan's apparently untimely Notice of Appeal defeats our appellate jurisdiction. Because we conclude that the district court's failure to enter a separate final judgment in this case prevented the thirty-day filing deadline from beginning to run for Hassan's Notice of Appeal, we hold that we have proper appellate jurisdiction in this case.

Under the Federal Appellate Rules, an appeal is commenced when a party files a notice of appeal with the district court. See Fed. R. App. P. 3(a). The time for filing this notice of appeal in a civil case in which the United States is not a party is "30 days after the date of entry of the judgment or order appealed from." See Fed. R. App. P. 4(a)(1). Furthermore, "[a] judgment or order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure." See Fed. R. App. P. 4(a)(7).

Rule 58 provides that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." See Fed. R. Civ. P. 58. The purpose of this rule is to eliminate confusion as to exactly when the clock for an appeal begins to run. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 384 (1978) (per curiam) ("The sole purpose of the separate-document requirement, which was added to Rule 58 in 1963, was to clarify when the time for appeal under 28 U.S.C. § 2107 [and Fed. R. App. P. 4(a)] begins to run.") In the past, we have stressed the importance for district courts to abide by this rule and to apply it mechanically by routinely entering a separate final judgment when the court resolves all outstanding issues. See United States v. City of Kansas City, 761 F.2d 605, 606-07 (10th Cir. 1985) ("[T]he separate-document requirement must be 'mechanically applied' in determining whether an appeal is timely."); see also Amoco Oil Co. v. Jim Heilig Oil & Gas, Inc., 479 U.S. 966, 969 (1986) (Blackmun, J., dissenting from the denial of certiorari) ("[T]he separate-document requirement must be applied mechanically in order to protect a party's right of appeal.").

On the other hand, some of our cases have held that it is appropriate to overlook the mechanical application of Rule 58's "separate document" requirement when a district court enters an order "containing neither a discussion of the court's reasoning nor any dispositive legal analysis." See Clough v. Rush,

959 F.2d 182, 185 (10th Cir. 1992); see also Kline v. Department of Health & Human Servs., 927 F.2d 522, 523-24 (10th Cir. 1991).  In these cases, we have sought to preserve the interests of the parties to obtain appellate review of the merits of their dispute and held that the appealed-from lower court orders were "effective" as final judgments in spite of the absence of a separate document.  See Clough, 959 F.2d at 185; Kline, 927 F.2d at 524.

In Hassan's case, the district court's abbreviated discussion suggests that the reasoning in Clough and Kline might apply here.  If we were to do so, however, the result would be to overlook the failure of the district court to enter a separate final judgment, and we would be forced to hold that Hassan missed the deadline to file a notice of appeal.[4]

We reach a different result in this case, though, because we are persuaded by the reasoning of a recent unpublished Order and Judgment that dealt with the same kind of jurisdictional intersection between the thirty-day filing deadline of Fed. R. App. P. 4(a)(1) and the separate-judgment requirement of Fed. R. Civ. P.

---

[4]Hassan's argument in his appeal brief that we should not count the Saturdays, Sundays, and holidays between when the district court's order was entered on November 18, 1996, and when his Notice of Appeal was filed on December 27, 1996, lacks merit.  The Federal Rules specifically address the effect of weekends and holidays on the computation of time limits.  See Fed. R. App. P. 26(a).  Rule 26(a) excludes weekends and holidays from a time computation only when the time limit at issue is less than seven days.  See id.  Because the time limit at issue here was thirty days, weekends and holidays are counted.

58. See Crislip v. Shanks, No. 94-2221, 1996 WL 156757 (10th Cir. Apr. 4, 1996) (unpublished Order & Judgment).  In Crislip, the court recognized that if it followed the reasoning of Clough and Kline, the appellants "would be denied their opportunity for review on the merits."  See id. at *1.  As Crislip noted, the Supreme Court has interpreted Rule 58 with a view toward ensuring appellate jurisdiction rather than defeating jurisdiction through technical deficiencies.  See Bankers Trust, 435 U.S. at 387 ("'It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.'") (quoting Foman v. Davis, 371 U.S. 178, 181 (1962)).  The Crislip court noted that the holding in Bankers Trust requires an appellate court to "interpret Rule 58 in order to preserve the right to appeal, not to jeopardize it."  See Crislip, 1996 WL 156757, at *2; see also McCalden v. California Library Ass'n, 955 F.2d 1214, 1218-19 (9th Cir. 1992) (holding that a notice of appeal filed more than eleven months after the appellant had stipulated to the dismissal of his remaining claims was still timely because the district court had failed to enter a separate final judgment); United States v. Carter, 906 F.2d 1375, 1376 (9th Cir. 1990) (holding that a notice of appeal filed more than three months after the district court entered a summary judgment order on all of the appellant's claims was still timely because the district court had failed to enter a separate final judgment).

In light of <u>Bankers Trust</u> and <u>Crislip</u>, we conclude that "the absence of a Rule 58 separate judgment in this case means that the time for filing a notice of appeal has not yet begun to run." <u>Crislip</u>, 1996 WL 156757, at *2. As a result, Hassan's appeal is not untimely, and we may exercise appellate jurisdiction under Fed. R. App. P. 4(a).[5] We also conclude that despite the absence of a separate judgment, the district court's order is sufficiently final to establish appellate jurisdiction under 28 U.S.C. § 1291. <u>See</u> <u>Burlington N. R.R. Co. v. Huddletson</u>, 94 F.3d 1413, 1416 n.3 (10th Cir. 1996) ("If no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review.); <u>see also</u> <u>Bankers Trust</u>, 435 U.S. at 385 ("[N]othing but delay would flow from requiring the court of appeals to dismiss the appeal. . . . Wheels would spin for no practical purpose.")

---

[5]Our finding that Hassan's Notice of Appeal is not untimely is buttressed by two facts: First, Hassan's Notice of Appeal was at most only seven days late, and second, Hassan's appointed counsel failed to file any withdrawal or other notice of the termination of her representation of Hassan. Under these circumstances, we believe that Hassan's slight delay could have been excused under Fed. R. App. P. 4(a)(5) (allowing a district court to extend the time for filing a notice of appeal upon a showing of "excusable neglect or good cause").

## II. Complete diversity of citizenship of parties.

The district court ordered that Hassan's complaint be dismissed because of the magistrate judge's finding that both Hassan and John Doe II were citizens of Georgia and thus there was not complete diversity in the case, as required under 28 U.S.C. § 1332(a)(1). (See R., Doc. #47, at 1-2.) We review de novo a district court's dismissal for lack of subject matter jurisdiction. See Painter v. Shalala, 97 F.3d 1351, 1355 (10th Cir. 1996). When a court evaluates a claim of diversity jurisdiction, it must look to the well-pleaded allegations on the face of the party's complaint. See Penteco Corp. Ltd. Partnership – 1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). If these allegations are insufficient to find diversity jurisdiction, the court may also look to other facts developed in the record. See id.

Under the diversity jurisdiction statute, the federal courts have original jurisdiction to decide a plaintiff's state-law lawsuit if the dispute "is between . . . citizens of different States." See 28 U.S.C. § 1332(a)(1). A party's "citizenship" for purposes of federal jurisdiction is determined by looking to the person's domicile. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). Domicile, in turn, is determined by finding the last place where a person resided with an intention of remaining there indefinitely. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) ("For adults, domicile is established

by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."); Crowley, 710 F.2d at 678 ("To effect a change in domicile, two things are indispensable: First residence in a new domicile, and second, the intention to remain there indefinitely.").

Furthermore, it is more than well-settled that a party's citizenship, i.e., his domicile, must be determined as of the moment the plaintiff's complaint is filed, and events either before or after the filing of the complaint will not defeat citizenship. See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (per curiam) (citing cases). As a result, courts and commentators have recognized that a person may suffer an injury in one state, then move to another state, thus acquiring citizenship/domicile there, and thereafter bring a federal diversity suit that would not have been possible at the time of the injury. See 13B Charles A. Wright et al., Federal Practice & Procedure § 3608, at 450-51 (2d ed. 1984) (collecting cases).

In Hassan's case, that is exactly what his complaint alleges.[6] Hassan's well-pleaded factual averments contend that he was a citizen of Georgia at the time the Atlanta Journal & Constitution published the news item about which he complains. (See R., Doc. #1, at 2, ¶ 4.) He subsequently moved to Utah, where he turned himself into law enforcement authorities, and he now resides in the Utah prison system. (See id. at 4, ¶¶ 18-20.) These allegations plainly establish that Hassan was a citizen of Utah for diversity purposes at the time he filed his complaint. The district court's conclusion that Hassan actually is a citizen of Georgia is both factually and legally incorrect.

---

[6]Some courts have recognized that the restrictions on the liberty of a prisoner affect the determination of the prisoner's domicile because domicile is a voluntary status. See Sullivan v. Freeman, 944 F.2d 334, 337 (7th Cir. 1991). As a result, courts have applied a presumption that when a prisoner has been moved out-of-state by prison officers, the prisoner's citizenship for diversity purposes is the state where he was domiciled before he was imprisoned. See id.; see also Ferrer v. Dailey, No. 96-3155, 1996 WL 731618, at *1 (10th Cir. Dec. 20, 1996) (unpublished Order & Judgment) ("For purposes of diversity jurisdiction, when an inmate has been forcibly incarcerated in another state, the state of citizenship 'should be the state of which he was a citizen before he was sent to prison unless he plans to live elsewhere when he gets out, in which event it should be that state.'") (quoting Singletary v. Continental Ill. Nat'l Bank & Trust Co., 9 F.3d 1236, 1238 (7th Cir. 1993)). This presumption, however, is rebuttable upon a showing of sufficient facts to indicate that a prisoner has both residence and present intent to remain indefinitely in a new state. See Sullivan, 944 F.2d at 337.

This doctrine concerning the citizenship of prisoners does not alter the substance of our conclusion below because Hassan's state of domicile before he was re-imprisoned in 1994 was Utah – he had voluntarily come to Utah with a present intent to remain in the state indefinitely.

As a result, it appears that there was complete diversity of citizenship between the remaining parties in this case at the time Hassan's complaint was filed.  Thus, we REVERSE and REMAND to the district court.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge