**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TODD CARLTON SMITH, also
known as Shameka Shemae Shamya,

      Plaintiff - Appellant,

    v.

WILLIAM CUMMINGS, Kansas
Department of Corrections, in his
official and individual capacity; RAY
ROBERTS, Kansas Department of
Corrections, in his official and
individual capacity; DON THOMAS,
Kansas Department of Corrections, in
his official and individual capacity; E.
L. RICE, Kansas Department of
Corrections, in his official and
individual capacity; JOHN DOE, as
discovery may provide, in his official
and individual capacity; JANE DOE,
as discovery may provide, in her
official and individual capacity;
STEVEN LAFRINERE, CO-I,

      Defendants - Appellees.

No. 05-3180

---

TODD CARLTON SMITH, also
known as Shameka Shemae Shamya,

      Plaintiff - Appellant,

    v.

WILLIAM CUMMINGS, Kansas

No. 05-3262

Department of Corrections, in his official and individual capacity; RAY ROBERTS, Kansas Department of Corrections, in his official and individual capacity; DON THOMAS, Kansas Department of Corrections, in his official and individual capacity; E. L. RICE, Kansas Department of Corrections, in his official and individual capacity; STEVEN LAFRINERE, CO-I,

Defendants - Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS\***
**(D.C. NO. 03-CV-3432-MLB)**

Todd Carlton Smith, also known as Shameka Shemae Shamya, pro se.

Ralph J. De Zago, Assistant Attorney General (Phill Kline, Attorney General), Topeka, Kansas, for Defendants - Appellees.

Before **TACHA**, Chief Circuit Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

**HARTZ**, Circuit Judge.

---

\*After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Todd Carlton Smith is serving a life sentence imposed by the state of Florida. While incarcerated in Florida in 1994, he carried out a contract killing on a fellow inmate. In June 2002 he was transferred for his own protection to the Kansas Department of Corrections under the Interstate Corrections Compact (ICC). Mr. Smith alleges that he received the transfer out of Florida in settlement of legal claims he had against the Florida Department of Corrections, but the record does not indicate whether he had expressed a preference that the transfer be to Kansas.

In April 2003 Mr. Smith was allegedly assaulted by a fellow prisoner at the Lansing Correctional Facility in Kansas. He filed suit in the United States District Court for the District of Kansas, raising civil rights claims under 42 U.S.C. § 1983. He later filed an amended complaint adding state-law claims under the Kansas Tort Claims Act (KTCA). The district court disposed of the § 1983 claims by entering a default judgment against one defendant and granting summary judgment in favor of the others. It then dismissed the KTCA claims for lack of jurisdiction. On appeal Mr. Smith challenges the grant of summary judgment, the denial of his damages request against the defaulted defendant, the failure to order the state to pay the default award, and the dismissal of his KTCA claims. He also contends that the district judge was biased against him. We have jurisdiction under 28 U.S.C. § 1291. We affirm the judgment on the § 1983

claims, but reverse the dismissal of the KTCA claims and remand for further proceedings concerning Mr. Smith's domicile to determine whether the court has diversity jurisdiction.

## I. BACKGROUND

Mr. Smith's claims are predicated on the following allegations: On April 18, 2003, Steven Lafrinere, a prison guard at Lansing, entered Mr. Smith's cell and directed him to another inmate's cell. That inmate forced Mr. Smith to engage in homosexual acts in retaliation for Mr. Smith's earlier murder of a fellow inmate in Florida who was a member of the Folk Nation, a national alliance of gangs. Two nights later the incident repeated itself. Mr. Lafrinere's employment at Lansing ended on April 27, 2003. On May 7, 2003, Mr. Smith reported the sexual assaults and asked to be placed in protective custody. While in protective custody he revealed Mr. Lafrinere's involvement in the assaults. Within a month Mr. Smith informed prison officials that he was not safe even in protective custody because of the enmity that other Lansing inmates bore towards him. Specifically, he complained that he and other inmates in protective custody were forced to pass through the general inmate population when going to medical "callouts"[1] and other required events. He claimed that he did not feel safe when

---

[1] The record does not reveal what "callouts" are. *See Searles v. Van Bebber*, 251 F.3d 869, 872 n.1 (10th Cir. 2001) (assuming that "the term refers to the list
(continued...)

he was exposed to the general prison population on these occasions. On June 9, 2003, Mr. Smith was transferred to the El Dorado Correctional Facility, where he was placed in long-term segregation. But a few weeks later he asked to be transferred out of segregation and then requested transfer back to Florida. These requests were denied.

Mr. Smith brought this § 1983 action against various prison officials (and the now-former prison guard, Mr. Lafrinere), claiming violations of his rights under the Equal Protection Clause, the Eighth Amendment, the Due Process Clause, the Sixth Amendment, the First Amendment, and the ICC. He sought compensatory and punitive damages and injunctive relief, including dismissal from state employment of the defendant prison officials, disciplinary proceedings against them, their federal prosecution, and his own removal from the custody of the Kansas Department of Corrections and return to Florida. He further asserted that he was entitled to relief under the KTCA based on the same alleged misconduct, stating after his claim against each defendant,

> If this court does not deem the foregoing counts to rise to the level of being Constitutional violations, plaintiff prays that this court retain jurisdiction pursuant to Diversity of Citizenship, 28 U.S.C. § 1332(a);(1)., as the plaintiff is a citizen of the state of Florida, and [the defendant] is a citizen of the state of Kansas . . . [the defendant] was a Kansas state employee, as defined in KS. 75-6102 of the

---

[1](...continued)
of inmates who are permitted to attend certain events").

Kansas Tort Claims Act. Pursuant to KS. 75-6103, the K.D.O.C. is liable for damages caused by the negligent or wrongful act or omission of its employees while acting within the scope of their employment . . . .

R. Doc. 8 at 18 (first ellipsis in original); *see also id.* at 27, 35, 43, 52. He sought $500,000 in damages from each of the prison officials. The district court ordered a *Martinez* report to allow the state prison administration to develop the factual record at an early stage in the court proceedings. *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (authorizing such reports). After receiving the report, the district court entered a default judgment against Mr. Lafrinere but granted summary judgment to the other defendants. The district court dismissed the claims raised under the KTCA. It reasoned that Mr. Smith was a Kansas citizen and therefore could not invoke the court's diversity jurisdiction against the defendants, who are all Kansas citizens; and it declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

## II. DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard that should have been used by the district court." *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (internal quotation marks omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.     Eighth Amendment Claims

In the district court Mr. Smith raised numerous Eighth Amendment claims, including claims against various prison officials relating to the alleged assault. The district court denied the claims against most of the defendants on the ground that they were not involved in the assault incidents and there is no vicarious liability under § 1983. Mr. Smith does not challenge these rulings. He does, however, raise two Eighth Amendment issues on appeal. First, he contends that his Eighth Amendment rights were violated by his placement in long-term segregation for two and a half years. But because he did not raise this claim in district court, we will not address it. *See Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1239 (10th Cir. 2005).

Second, he contends that his Eighth Amendment rights were violated by the failure of E. L. Rice, a prison official at Lansing, to "ensure that the inmates in [the] general population were not in the area of [Mr. Smith] when being escorted to and from the Protective Management Unit." Aplt. Br. at 16. The district court properly rejected this claim. "To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm by other inmates], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious

harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (internal quotation marks omitted). Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context. *Id.*

The district court ruled that Mr. Smith had satisfied neither the objective component nor the subjective component of this test. We agree. Mr. Smith has not shown that he was incarcerated under conditions posing a serious risk of harm. He was never assaulted while he was being escorted out of the protective housing unit. Nor did he present evidence that any inmate had ever been assaulted in such circumstances. Moreover, prison officials took precautions to minimize the risk of harm when prisoners were escorted out of the protective housing unit. These precautions included clearing the area of general-population inmates when large groups of protective-custody inmates were escorted out of the unit. And when individual inmates were brought out of protective custody, they were escorted by at least one prison guard. In light of the lack of evidence that any prisoner was ever harmed on these occasions, and the evidence of the precautions taken by prison officials, summary judgment was appropriate on the ground that there was no substantial risk of harm. Nor has Mr. Smith presented evidence that prison officials were deliberately indifferent to his safety. On the

contrary, when officials learned that he was concerned about his safety, they immediately took steps to protect him. Mr. Smith concedes that prison officials did not learn of his concerns until he filed a grievance, and the record shows that he was transferred to El Dorado for his own safety the day after he filed the grievance. The district court properly granted summary judgment on Mr. Smith's Eighth Amendment claims.

## B.    ICC Claim

Mr. Smith also appeals the district court's rejection of his claim under § 1983 that he was denied rights granted by the ICC. But we agree with the district court's conclusion that violations of the ICC are not violations of federal law, and therefore are not actionable under § 1983. As we said in *Garcia v. LeMaster*, 439 F.3d 1215, 1219 n.7 (10th Cir. 2006), in dismissing a prisoner's § 1983 claim,

> To the extent that [the prisoner] contends [state] officials failed to abide by the ICC, and to the extent he seeks a declaration that [state] officials must follow the requirements of the ICC, he also fails to state a claim upon which relief may be granted. The ICC's procedures are a purely local concern and there is no federal interest absent some constitutional violation in the treatment of these prisoners.

(internal quotation marks omitted).

## C.    Damages

Mr. Smith contends that the district court erred in the amount of damages it awarded him in its default judgment against Mr. Lafrinere. He contends that the "District Court failed to comply with [Fed. R. Civ. P. 54 (c)], and award [Mr. Smith] the amount of Damage requested in his complaint against Steven Lafrinere, in the amount of $12,000,000." Aplt. Br. at 20. Mr. Smith has misconstrued the import of Rule 54(c), which establishes a ceiling rather than a floor on damages. It states, "A judgment by default *shall not* be different in kind from or *exceed* in amount that prayed for in the demand for judgment." (emphasis added). Because Rule 54(c) does not mean what Mr. Smith thinks it means and he has not directed us to any other authority supporting his claim for $12,000,000 in damages, this claim must fail.

Mr. Smith also argues that the Kansas Department of Corrections must pay the $6000 damages award. But the department is not a party, so no judgment could be entered against it. *See Russ v. Uppah*, 972 F.2d 300, 302 n.4 (10th Cir. 1992). And we need not dwell on his apparent contention that his suit against Mr. Lafrinere is a suit against him in his official capacity that should be construed as a suit against the state, because § 1983 does not authorize suits against states. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

**D.    Kansas Tort Claims Act/Diversity Jurisdiction**

-10-

For his KTCA claims, Mr. Smith's complaint invoked the diversity jurisdiction of the federal district court under 28 U.S.C. § 1332(a)(1). The district court ruled that because Mr. Smith and the defendants were all Kansas citizens, the requisite diversity of citizenship was absent. The court then exercised its discretion not to accept supplemental jurisdiction under 28 U.S.C. § 1367 and dismissed the KTCA claims. Mr. Smith appeals the dismissal, asserting that as a Florida prisoner he is a citizen of that state, so diversity of citizenship was present.

For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). To establish domicile in a particular state, a person must be physically present in the state and intend to remain there. *Keys Youth Servs., Inc. v. Olathe*, 248 F.3d 1267, 1272 (10th Cir. 2001). Once domicile is established, however, the person may depart without necessarily changing his domicile. "To effect a change in domicile, two things are indispensable: First, residence in a new domicile, and second, the intention to remain there indefinitely." *Crowley,* 710 F.2d at 678.

Because domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state. *Sullivan v. Freeman*, 944 F.2d 334,

337 (7th Cir. 1991). *See* Restatement (Second) Conflict of Laws 2d § 17 cmt. b. (1988 rev.) (prisoner "highly unlikely" to have state of mind necessary for domicile in state of imprisonment). In *Sullivan* the Seventh Circuit held that an Illinois prisoner's domicile was Virginia because he lived there before his imprisonment and planned to return there upon release. 944 F.2d at 337. The presumption, however, is rebuttable. *See id.*; *Housand v. Heiman*, 594 F.2d 923, 925-26 n.5 (2d Cir. 1979); *Stifel v. Hopkins*, 477 F.2d 1116, 1126-27 (6th Cir. 1973); *Jones v. Hadican*, 552 F.2d 249, 250-51 (8th Cir. 1977); 15 James Wm. Moore et al., Moore's Federal Practice § 102.37[8][b] (3d ed. 1997). If, for instance, the prisoner decides he wants to live in another state upon release and is therefore assigned to a prison in that state, his domicile becomes that state. *Sullivan*, 944 F.2d at 337. Factors to be weighed in determining domicile include the prisoner's declaration of intentions, "the possibility of parole . . . , the manner in which [he] has ordered his personal and business transactions, and any other factors that are relevant to corroboration of [the prisoner's] statements." *Stifel*, 477 F.2d at 1126-27.

The district court explained as follows its determination that Mr. Smith was a Kansas citizen:

> [Mr. Smith] consented to being transferred to Kansas. In fact, [he] asserts that he won the right to be transferred to Kansas as a settlement for claims he had against the Florida Department of Corrections. Under those circumstances, the court concludes that

[Mr. Smith] voluntarily relocated to Kansas; and, given that he is serving a life sentence, [he] intends to remain in Kansas indefinitely.

R. Doc. 82 at 19 (Dist. Ct. Order, April 19, 2005). Ordinarily, we would review for clear error the district court's factual findings regarding Mr. Smith's citizenship. *See Aves ex rel. Aves v. Shah*, 997 F.2d 762, 766 (10th Cir. 1993). Under that standard we would question whether the determination here is affirmable, given the presumption that Mr. Smith retained his Florida domicile. First, it is unclear whether Mr. Smith had specifically requested a transfer to Kansas in 2002 or was simply seeking any safe haven. A desire to flee the perilous circumstances of his confinement in Florida makes his decision more like that of a person living in forced exile, *see Stifel*, 477 F.2d at 1121, than that of one who has moved voluntarily. We also note that his waiver of extradition consenting to confinement in Kansas includes a consent to be returned to Florida upon the demand of either state. Moreover, the district court apparently overlooked other evidence of Mr. Smith's intentions. In 2003 Mr. Smith invoked the ICC in an effort to return to Florida. And apparently one element of relief sought in his federal complaint is that he be returned to Florida.

But we need not resolve whether the district court's domicile determination was proper on the present record, because a procedural error requires remand in any event. The district court failed to afford Mr. Smith an opportunity to rebut the challenge to the claim of Florida citizenship in his complaint. The defendants

-13-

never raised a challenge to Mr. Smith's claim. The district court apparently acted sua sponte and without notice. Because Mr. Smith had no opportunity to respond to the district court's concern about his domicile, we reverse the dismissal of the KTCA claims and remand to the district court for further proceedings to determine domicile.

### E.    Judicial Bias

Finally, Mr. Smith claims that District Judge Monti Belot is biased against inmates. We reject this claim because he does not cite any evidence in support of this conclusory allegation. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (we will not consider on appeal factual allegations in a brief which are unsupported by citation to the record).

We REVERSE the district court's ruling that it did not have diversity jurisdiction over Mr. Smith's state-law claims, and REMAND for further proceedings consistent with this opinion. We AFFIRM the judgment with respect to the § 1983 claims. We DENY the appellees' motion to file a supplemental brief and both motions to strike.