**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CLIFTON BELCHER,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
J.W. BOOKER, Warden,
USP-Leavenworth Kansas; JON
LOFTNESS, Receiving and Discharge
Supervisor; ALLEN BEARD, ISM
Lieutenant; CINDY ANDERSON,
Case Manager; SCOTT ASHMAN,
Unit Manager; UNKNOWN,
GOVERNMENT OFFICIALS,

      Defendants-Appellees.

No. 06-3009
(D.C. No. 03-CV-3261-JWL)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this pro se appeal, Clifton Belcher challenges the summary judgment entered on his *Bivens* claim.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND[2]

On September 1, 1999, while incarcerated in the United States Penitentiary in Leavenworth, Kansas, Mr. Belcher was approached by an inmate known as "Cornbread." Belcher Dep. at 10. Cornbread stated that he knew Mr. Belcher's co-defendant, Steven Fowler, and that Fowler "was real upset that [Mr. Belcher] let the police or the Feds trick [Mr. Belcher] into turning on [Fowler] and that [Fowler] was in fact going to take care of . . . [Mr. Belcher's] family." *Id.* at 12. Although Fowler was apparently not present at the Leavenworth facility, Mr. Belcher was concerned that Cornbread "was more or less telling me that he needed to talk to me later on." *Id.* at 19.

Mr. Belcher reported the incident to case manager Cindy Anderson, expressing his concern that Cornbread "knows that I cooperated . . . [a]nd . . .

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971) (providing a cause of action for monetary damages against federal officials in their individual capacities for a violation of a federal constitutional right). On appeal, Belcher does not challenge the district court's earlier dismissals of his claim under the Federal Tort Claims Act and his *Bivens* claim to the extent it targeted (1) the individual defendants in their official capacities; (2) the United States; (3) the unnamed defendants; and (4) warden Booker.

[2] The background facts are based entirely on Mr. Belcher's deposition testimony.

was relaying a message from [Fowler]." *Id.* at 23. Anderson offered to place Mr. Belcher in protective custody, but he declined, and instead asked to be transferred to another facility. Anderson responded that "they would have to have" Cornbread's real name. *Id.* at 30.

Unable to learn Cornbread's true identity, Mr. Belcher approached Anderson and inmate systems manager Jon Loftness later that afternoon. Mr. Belcher "point[ed] [Cornbread] out" and stated that he "remembers me from the street" and "was delivering a message." *Id.* at 37. Mr. Belcher also gave Loftness an inmate request form, "[b]asically saying the very same thing." *Id.* Loftness "said that he would check into it and he would help." *Id.* Loftness apparently forwarded the form to investigator Allen Beard, who discarded it after ascertaining that Mr. Belcher "had no separates on compound." *Id.* at 95. Mr. Belcher never saw Cornbread again.

On November 19, Mr. Belcher had a regularly scheduled meeting with Anderson and unit manager Scott Ashman. They discussed Mr. Belcher's receipt of a letter from his attorney discussing a successful "Rule 35" motion and Mr. Belcher's attendant eligibility for a different custody level and a transfer to another institution. *Id.* at 43; *see also id.* at 47-48. Mr. Belcher also "fill[ed] . . . Ashman in on the details of . . . being confronted by Cornbread." *Id.* at 48. Anderson and Ashman told Mr. Belcher to "keep a low profile" until they could "put in for a transfer." *Id.*

Two days later, on November 21, the prison experienced a complete power outage. In the darkness, Mr. Belcher was attacked in his cell by three inmates, one of whom he recognized as "T-Loc." *Id.* at 76. One of the two unidentified attackers indicated that he knew Mr. Belcher was a "cooperator." *Id.* at 76. Mr. Belcher suffered severe injuries to his face and head.

After exhausting administrative remedies, Mr. Belcher instituted this *Bivens* action, alleging that the defendants violated his Eighth Amendment right to be protected from violence from other inmates. The district court granted the defendants summary judgment, finding no triable issue as to whether any defendant was deliberately indifferent to his safety. Regarding Anderson, the district court observed that she offered to place Mr. Belcher in protective custody when he first came to her on September 1. And after that date, Mr. Belcher failed to notify Anderson of any further threats to his safety. Regarding Loftness, the district court recognized that Mr. Belcher only told him that Cornbread knew Mr. Belcher's case and had delivered a message. And there was nothing to indicate that Loftness knew of any specific threat to Mr. Belcher's safety. As for Ashman, the district court concluded that his knowledge of Mr. Belcher's encounter with Cornbread ten weeks earlier did not amount to awareness of a specific threat. Finally, regarding Beard, the district court observed that his discarding of the inmate request form did not show a culpable mental state because the form did not express a direct threat to Mr. Belcher's safety.

On appeal, Mr. Belcher contests the summary judgment, stating that (1) Anderson would not help him without Cornbread's real name; (2) Loftness merely passed on his inmate request form to Beard, who discarded it; (3) Ashman "refuse[d] to acknowledge his authority over the situation," Aplt. Br. at 4; (4) "[o]nce . . . any prisoner reports any type of threat it is an official duty to place him in protective custody immediately erroring [sic] on the side of caution," *id.*; and (5) the defendants committed perjury and their attorney prevented him, during his deposition, from "speaking clearly about the events that occurred," *id.* at 7.

### DISCUSSION

We review de novo the entry of summary judgment. *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310 (10th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party." *Mickelson*, 460 F.3d at 1310.

The Eighth Amendment imposes upon prison officials a duty to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Liability on a failure-to-protect claim arises when the

plaintiff was incarcerated under conditions posing a substantial risk of serious harm (the objective component of the claim), and the defendant prison officials were deliberately indifferent to the plaintiff's safety (the subjective component of the claim). *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).

After reviewing the record and the parties' arguments, we AFFIRM the district court's summary judgment for substantially the same reasons stated therein. We remind Mr. Belcher of his continuing obligation to make partial payments on his appellate filing fee until the entire fee has been paid. *See* 28 U.S.C. § 1915(b).

Entered for the Court

Terrence L. O'Brien
Circuit Judge