

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2009

# Myron Ward v. John Lamanna

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2023

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Myron Ward v. John Lamanna" (2009). *2009 Decisions.* Paper 1188.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 07-2023 & 08-2367

———————

MYRON WARD,
                    Appellant

v.

JOHN J. LAMANNA; DEBRA FORSYTH;
MARTY SAPKO; STEVEN HOUSLER; NED WATSON;
UNITED STATES OF AMERICA

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action Nos. 04-cv-00011/1-04-cv-00011)
District Judge: Honorable Sean J. McLaughlin
Trial Judge: Honorable Susan Paradise Baxter

———————

No. 07-2024

———————

KENNY HILL,
                    Appellant

v.

JOHN J. LAMANNA; DEBRA FORSYTH;
MARTY SAPKO; STEVEN HOUSLER; NED WATSON;
UNITED STATES OF AMERICA

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 05-cv-00160)
District Judge: Honorable Sean J. McLaughlin

No. 07-2025

LESLIE R. KELLY,
Appellant

v.

MARTY SAPKO; DEBRA FORSYTH;
STEVEN HOUSLER; UNITED STATES
OF AMERICA; JOHN J. LAMANNA;

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 03-cv-00368)
District Judge: Honorable Sean J. McLaughlin

Argued March 23, 2009

Before: RENDELL, AMBRO, and JORDAN, <u>Circuit Judges</u>

(Opinion filed: June 15, 2009)

Jeffrey M. Davidson, Esquire (Argued)
Covington & Burling
One Front Street
San Francisco, CA   94111

Elliot Schulder, Esquire
Covington & Burling

1201 Pennsylvania Avenue, N.W.
Washington, D.C.   20004-0000

        Counsel for Appellants

Mary Beth Buchanan
    United States Attorney
Donovan J. Cocas (Argued)
    Assistant U.S. Attorney
Robert L. Eberhardt, Esquire
Rebecca R. Haywood, Esquire
Michael C. Colville, Esquire
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA   15219-0000

        Counsel for Appellees

---

OPINION

---

AMBRO, Circuit Judge

Appellants Myron Ward, Kenny Hill, and Leslie Kelly are former prisoners at the Federal Correctional Institute-McKean (FCI-McKean), located in Pennsylvania. They filed an Eighth Amendment claim against several members of the prison's staff[1] for exposure to an unreasonable risk of serious harm from working in the prison's factory. The District Court dismissed this *Bivens*[2] action on summary judgment, and the inmates

---

[1]Defendants include: John Lamanna, Warden; Deborah Forsyth, Superintendent of Industries for the factory; Marty Sapko, factory manager; Stephen Housler, factory safety manager; and Ned Watson, a prison corrections officer.

[2]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

3

appealed.[3]  We affirm the District Court.

Since we write primarily for the parties who are familiar with the facts and procedural posture of this case, we provide only those facts that are pertinent to resolving the arguments on appeal.[4]

While incarcerated at FCI-McKean in the early 2000s, Appellants worked at the prison factory.  At that time, the factory manufactured furniture components.  Micore Board and Lockweld Glue were used in the manufacturing process,[5] and the factory had an extensive dust collection and ventilation system.

Micore Board is a synthetic substitute for particle board.  Inmates cut the board using the factory's machinery.  This process produced a white dust.  The manufacturer's warning states: "Dust hazard. . . . Do not cut with power equipment unless a dust collector is used on the equipment or local exhaust is used and a[n approved] respirator is worn. . . . Wear eye and skin protection."  Micore Board's Material Safety Data Sheet

---

[3]This case began as separate *pro se* actions in the District Court.  The Court appointed counsel and consolidated the cases.  Two inmates who also filed cases did not join this appeal. The District Court had jurisdiction under 28 U.S.C. § 1331.  We have appellate jurisdiction under 28 U.S.C. § 1291.

[4]Appellants' counsel took this appeal *pro bono*, and we appreciate the quality of their efforts.

[5]These two products are the basis for the Eighth Amendment claim, but Appellants' brief and counsel's presentation during oral argument focused on the unreasonable risk of serious harm created by Micore Board dust.  We limit our discussion to this product as well.  To the extent arguments related to exposure to an unreasonable risk from Lockweld Glue, an industrial adhesive, were raised, there are no disputed issues of material fact, and the District Court's grant of summary judgment was appropriate.

similarly indicates: "If cutting or trimming with power equipment[,] dust collectors and local ventilation must be used." "When panels are cut or trimmed, especially with power tools, the resulting dust may cause transitory mechanical irritation to skin, eyes, or respiratory tract," and with "sustained high level exposure" risks include lung disease or cancer. It also states that respiratory protection is "[n]ot typically necessary under normal conditions of use," but recommends that workers wear a "dust respirator in poorly ventilated areas . . . and/or when dusty conditions exist."

In 2001 and 2003 the Occupational Safety and Health Administration (OSHA) received three anonymous complaints regarding the factory's working conditions, primarily related to air quality. The results of the investigations are part of the summary judgment record. In 2001, OSHA declined to investigate, but recommended that the prison voluntarily conduct air quality testing within an approximately one-month time period. Within the OSHA time frame, the prison hired a private company and conducted the testing. The 2001 air quality test results all registered within OSHA's regulations.

In April 2003, OSHA conducted an on-site investigation.[6] The OSHA compliance officer visited the prison factory at least five times between April and August of that year, videotaped his observations, and conducted air quality testing. In an affidavit, the compliance officer stated that, throughout his investigation, he did not see significant dust

---

[6]OSHA notified the prison of the anonymous complaint on April 15, 2003. According to the OSHA compliance officer's affidavit, prior notification is common practice when an investigation involves a prison. The OSHA compliance officer's first site visit to the factory occurred on April 16, only one day after the notification.

generation or accumulation, or "any signs that a cloud of dust had existed and been subsequently removed prior to my arrival." There were "small layers of dust [ ] found on various surfaces," but "it appeared that most generated dust was exhausted by the ventilation system and removed through duct work to an outside repository." He noted that several inmate workers "expressed concern about the dust in the factory." To conduct the air quality testing, OSHA obtained air samples throughout the factory and personal samples from several inmates involved in working with Micore Board.

OHSA closed the case in August 2003. No citations were noted regarding air quality because the test results indicated that "worker exposures to silica dust and other byproducts of Micore [B]oard did not exceed 10% of allowable levels." However, OSHA made approximately seven recommendations that were "primarily designed to reduce worker contact with any unavoidable dust which may have been generated."[7] It also issued a formal "Notice of Unsafe or Unhealthful Working Conditions," but none of the "Serious" violations related to the factory's air quality. One "other than Serious" violation pertained to the lack of training, including for use of Micore Board and

---

[7]These recommendations related primarily to air quality: (1) eliminate use of shop vacs for blowing dust off clothes and surfaces; (2) use the available coveralls and provide tight-fitting goggles and caps to keep dust out of worker's eyes and hair; (3) have respirators available and train personnel in their use; (4) eliminate the practice of workers throwing scrap material into an open dumpster that generates dust (instead, use a tight-fitting lid and an open rubber flap); (5) use long-held sander rather than abrasive pad on boards; (6) train personnel on information contained in the Material Safety Data Sheets; and (7) make sure personnel maintain personal hygiene, cleaning hands and skin thoroughly before eating, smoking, and drinking. According to the prison officials and a letter to OSHA, they implemented all the suggested corrections (though some took more time than others). There is no evidence to suggest otherwise.

Lockweld Glue.  The prison officials corrected all the cited violations (*e.g.*, fire hazards, chemical storage, electrical, labeling).

## I.

We review a grant of summary judgment *de novo*, using the same standards as the District Court did here.  *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).  We view the facts in a light most favorable to the nonmoving party, and apply the same standard that guides district courts.  *Id*.; *Erie Telecomms. Inc. v. City of Erie*, 853 F.2d 1084, 1093 (3d Cir. 1988).  Under that standard, a party is entitled to summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits[,] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citing *Helling v. McKinney*, 509 U.S. 25 (1993)).  This claim has an objective and a subjective element.  To satisfy the objective part of the analysis, the inmates must show that the environmental hazard posed an unreasonable or substantial risk of serious harm to their health.  *Helling*, 509 U.S. at 35.  And to meet the subjective part, they must show the prison officials exposed them to that risk with deliberate indifference.  *Id*.

## II.

Even when viewing the facts in the light most favorable to the plaintiffs, they

cannot meet the subjective element of deliberate indifference.[8] The prison staff only acted with deliberate indifference if they knew of and disregarded an excessive risk to the inmates' health or safety. *Farmer*, 511 U.S. at 837. Put differently, the staff must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* This standard requires "a state of mind more blameworthy than negligence." *Id.* at 835 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (requiring "more than ordinary lack of due care for the prisoner's interests or safety"). To violate the Cruel and Unusual Punishments Clause of the Eighth Amendment, "a prison official must have a 'sufficiently culpable state of mind,'" which is similar to criminal law "recklessness." *Id.* at 834, 836–37 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

There is no evidence to support a reasonable inference that the prison staff was aware of an unreasonable risk.[9] First, deposition testimony of the staff members indicates that they were not aware of an unreasonable risk. Second, there was no formalized environmental or health hazard training for staff as well as inmates, which underscores staff's lack of awareness.[10] The factory's safety officer, Stephen Housler, never received

_____

[8]Thus, we need not reach the objective element of the test here.

[9]Appellants suggest we make several inferences in their favor. These inferences need not be discussed because they do not determine the outcome here.

[10]The record also indicates that the staff did not take special precautions to protect themselves from potential health risks created by Micore Board or Lockweld Glue when they were on the factory floor. Like the inmates, none of the staff wore special clothing or changed clothes when leaving work, even though coveralls were available to inmates

any specific Micore Board or Lockweld Glue training, and, for the most part, the prison officials were unfamiliar with the information on the Material Safety Data Sheet.[11] Third, the two inspections involving OSHA during the inmates' tenure at the factory do not reflect deliberate indifference by the prison officials. The results of the 2001 and 2003 tests showed the prison officials that the factory's air quality, which encompassed the amount of Micore dust containing silica and other harmful chemicals in the air, was within acceptable OSHA regulatory levels. In 2003, there were no "Serious" OSHA violations pertaining to air quality and the factory had a large-scale dust collection system. When viewed most generously, these facts only document behavior that indicates possible negligence or carelessness.

Any showing of deliberate indifference also is foreclosed by the remedial measures staff took in responding to the 2003 OSHA recommendations and violations. *See id.* at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). The prison corrected all the recommendations and violations within OSHA's required time frame, which undermines the requirement of "disregard." *Id.* at 837; *see also Smith v. Cummings*, 445 F.3d 1254, 1258–59 (10th Cir. 2006) (affirming summary judgment on deliberate indifference where prison officials

_____

and staff. They never wore respirators or tight-fitting goggles, and only occasionally wore dust masks that were provided to all inmates and staff, but were optional.

[11]The few staff that were aware of this information only became knowledgeable after the OSHA inspections.

promptly took steps to protect an inmate as soon as they learned about a risk to his safety).

### III.

The inmates also raise a spoliation argument. Spoliation is a negative inference drawn from a party's destruction of relevant evidence, reflecting a "consciousness of guilt." We review the District Court's denial of an evidentiary inference based on spoliation of evidence for abuse of discretion. *See In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 574 (3d Cir. 2007) (citing *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997)).

In late 2005, during the District Court proceedings, the factory was converted from manufacturing furniture components to manufacturing small plastic items. The conversion process took approximately six months. The District Court held a thorough evidentiary hearing on this issue prior to issuing its summary judgment opinion. The record indicates that the decision to convert the factory was economic and made solely by senior Bureau of Prison officials without knowledge of the litigation pertaining to the factory. For this reason and others, the Court rejected the inmates' request for a spoliation inference. It did not abuse its discretion in reaching this conclusion, although we need not delve into a detailed discussion because it does not affect our analysis concerning the inmates' failure to meet the subjective prong of their Eighth Amendment claim.

\* \* \* \* \*

We thus affirm the District Court's grant of summary judgment.[12]

---

[12]Appellees' brief also raises the defense of qualified immunity. We are affirming the District Court on substantive grounds and need not address this issue.