FILED
United States Court of Appeals
Tenth Circuit

November 8, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT E. GREEN,

     Plaintiff-Appellant,

v.

CORRECTIONS CORPORATION OF
AMERICA,

     Defendant-Appellee.

No. 10-3217
(D.C. No. 5:10-CV-03062-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **TACHA,** and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,

therefore, submitted without oral argument.

Robert Green, a federal prisoner appearing pro se, appeals the district

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

court's dismissal of his civil rights complaint brought pursuant to "28 U.S.C. § 1331 and <u>Bivens</u>", challenging the use of force against him, the conditions of his detention, and the issuance of a disciplinary report.  ROA at 4-6.  The district court dismissed the complaint for failure to exhaust available remedies, failure to state a claim upon which relief could be granted, and lack of jurisdiction.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

I

The allegations in Green's complaint are taken as true for the purpose of this appeal.  Green alleges he is (or at least was) a pre-trial detainee[1] housed at the Leavenworth, Kansas Detention Center, a private prison run by defendant Corrections Corporation of America ("CCA") pursuant to a contract with the United States Marshals Service.  On October 17, 2009, Green alleges he was attacked by another prisoner.  Green subdued the other prisoner and restrained him for twenty minutes before a prison official, Officer Medill, arrived.  Medill ordered the two to "break it up."  ROA at 4.  Green complied and freed the other prisoner's arms, which allowed the prisoner to punch Green in the face.  Medill then sprayed Green in the face with pepper spray, but did nothing to the other prisoner.  Green alleges that he is African-American, the other prisoner is not

---

[1] Green did not identify himself as a pre-trial detainee in his complaint, but subsequently identified himself as such.

2

African-American, and Medill is Caucasian.  Id.

Green was taken to "medical," where he tried to rinse his eyes out, but had difficulty because his wrists were handcuffed behind his back.  Medical personnel refused to re-cuff him so his hands would be in front of his body.  Green was subsequently taken to "ad-seg" (administrative segregation) where the cuffs were removed and he was able to rinse his eyes.  Id.  Green alleges that the chemicals were in his eyes for thirty minutes, that a burning sensation remained for two days, and that he has permanent scarring around his eye area.

After a disciplinary proceeding, Green received a disciplinary report for fighting and fifteen days' "dis-seg" (presumably, disciplinary segregation).  Id. at 5.  Green submitted an informal grievance resolution form ("IR") alleging that Medill gave him an order that endangered his safety and that he was the victim of racially-motivated physical abuse.  He requested that the disciplinary report be expunged.  Id. at 6.  The IR was returned without action, with the notation: "not eligible for the IR process, must discuss with [the disciplinary hearing officer]."[2] Id. at 5.  Green alleges that this is evidence of "retaliatory intimidation to prevent [him] from" filing a grievance.  Id.  Green raises a number of claims in his complaint and seeks relief in the form of "compensatory and monetary damages against the corporation through injunctive relief in the amount of $150,000 actual

[2] This is Green's characterization of CCA's response.  The response on the copy of the form that Green submitted is illegible.

3

and $300,000 punitive." Id.[3]

The district court issued an order stating that Green cannot bring his asserted claims against the CCA, Green failed to state a claim for a constitutional violation, and Green failed to establish the court's diversity jurisdiction over what are, essentially, state-law tort claims. Id. at 13-23. The district court also observed, in a footnote, that it appeared Green had not fully exhausted his administrative remedies. Id. at 20 n.4. The district court gave Green twenty days to correct the deficiencies in his complaint. Green responded by filing several documents alleging, among other things, that he had appealed from the disciplinary proceeding but received no response, id. at 24-25, and that there is complete diversity of citizenship because his domicile is Missouri, not Kansas, id. at 27. The district court determined Green had not cured the deficiencies in his complaint and dismissed the case based on failure to state a claim, lack of diversity jurisdiction, and failure to exhaust administrative remedies. Id. at 55-56. Green then filed a motion for relief from judgment under Fed. R. Civ. P. 60(b), three "supplemental" Rule 60(b) motions, and a Motion for Declaratory Judgment. The district court denied Green's post-judgment motions.

---

[3] In his post-judgment motions, Green requests, for the first time, removal of the disciplinary report from his record and some form of declaration of his rights. Green's complaint is properly characterized as seeking only damages, and the district court did not need to consider his post-judgment requests for injunctive and declaratory relief.

II

*A. Standard of Review*

We review the district court's dismissal of Green's complaint de novo. See Fields v. Okla. State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007) (reviewing determination of failure to exhaust de novo); Mann v. Boatright, 477 F.3d 1140, 1145 (10th Cir. 2007) (reviewing dismissal for lack of subject matter jurisdiction de novo); McBride v. Deer, 240 F.3d 1287, 1289 (10th Cir. 2001) (reviewing dismissal for failure to state a claim de novo). We review the district court's denial of Green's post-judgment motions for an abuse of discretion. Searles v. Dechant, 393 F.3d 1126, 1131 (10th Cir. 2004). A pro se litigant's pleadings are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

*B. Constitutional Claims*

Green brings his constitutional claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). A Bivens claim is an implied private cause of action for damages against a federal official for violation of a plaintiff's constitutional rights. In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the Supreme Court held that a Bivens claim is not available against a private corporation operating under contract with the federal government. The Court reasoned that Bivens actions are available against individual officials only, and not against their employers. Id. at 70-72; see also

5

Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1099 (10th Cir. 2005) (discussing Malesko's holding), vacated in part en banc, 449 F.3d 1097 (10th Cir. 2006). Therefore, Green cannot state a Bivens claim against CCA. The district court determined that Green named only CCA as a defendant and, therefore, all his Bivens claims failed.

We agree with the district court that Green cannot bring Bivens claims against the CCA. However, as this action is filed pro se, the district court should not have dismissed all of Green's Bivens claims on this basis. In the body of his complaint, Green alleges that Medill, individually, failed to protect him, used excessive force, and used force in a racially discriminatory manner. He also alleges that unidentified medical personnel refused to treat him. As our review is de novo, we construe Green's complaint liberally and deem these allegations to be Bivens claims against individual CCA employees. Cf. Trackwell v. United States Government, 472 F.3d 1242, 1243-44 (10th Cir. 2007) ("in a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are"). Nonetheless, we affirm the district court's dismissal of all Green's Bivens claims because his allegations, taken as true, do not establish that these individuals

6

violated his constitutional rights.[4]

### i. Failure to Protect; Failure to Provide Medical Care

Green alleges that Medill violated his constitutional rights by giving him a directive that allowed the other prisoner to punch him. He also alleges that his rights were violated when medical personnel refused to uncuff him so he could wash the pepper spray out of his eyes. Prison officials have a duty to protect prisoners from harm, including harm caused by other prisoners. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). To prevail on a failure to protect claim, a prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials acted with "deliberate indifference to inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994).[5] "Deliberate indifference" means that the prison official knew of and disregarded an excessive risk to prisoner health or safety. Id. at 837.

Green's allegations, if taken as true, do not establish a constitutional

---

[4] As regards Green's Due Process and First Amendment claims, even if these claims had been brought against proper defendants, those claims would also fail because Green's factual allegations do not establish constitutional violations. Green had no right to a written disposition of his appeal from the disciplinary hearing, nor did he have a constitutional right to use the prison grievance procedure. Further, his allegations do not establish that any prison official interfered with his First Amendment rights.

[5] Pretrial detainees are entitled to the same protection regarding prison conditions under the Due Process Clause as convicted prisoners are afforded under the Eighth Amendment. Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992).

violation. Green could not show that Medill knew of and disregarded an excessive risk to Green's safety when he directed the fighting inmates to "break it up." In fact, permitting the two to remain in physical contact would likely have created a greater risk to prisoner safety. The fact that some harm to Green did, in fact, result does not mean that Medill acted with deliberate indifference to Green's safety. Likewise, Green's allegation that he could not successfully wash the chemicals out of his eyes for thirty minutes does not rise to the level of a constitutional violation. Prison employees do not exhibit deliberate indifference by placing a prisoner who has recently been in a fight in wrist restraints, or by keeping him in restraints until the prisoner is in an area where it is safe to remove them. Green was able to wash his eyes out completely within thirty minutes. We agree with the district court that Green failed to state a constitutional claim regarding the failure to protect him from harm or the failure to provide adequate medical care.

### ii. Excessive Force

Green alleges that Medill violated his constitutional rights by using pepper spray against him. The Constitution prohibits the egregious use of force against a prisoner.

> To be cruel and unusual punishment, conduct that does not purport to
> be punishment at all must involve more than ordinary lack of due
> care for the prisoner's interests or safety. . . . The infliction of pain in
> the course of a prison security measure, therefore, does not amount to
> cruel and unusual punishment simply because it may appear in

8

> retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

Whitley v. Albers, 475 U.S. 312, 319 (1986). An excessive force claim has an objective and subjective element. A plaintiff must establish that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and that the defendant applied force "'maliciously and sadistically,'" rather than "'in a good faith effort to maintain or restore discipline.'" Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003) (quoting Giron v. Corrections Corp. of Am., 191 F.3d 1281, 1289 (10th Cir.1999)).

Green's allegations do not establish an excessive force claim. This is not a case like Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996), where there was no indication that the prisoner had acted inappropriately before he was beaten by prison guards. Here, Green's allegations establish that Medill had reason to use some force. Green admits that he was physically restraining another prisoner immediately before Medill used the pepper spray. A prison official may use reasonable force to "maintain or restore discipline." Whitley, 475 U.S. at 320. Medill was justified in using some force to break up the fight, regardless of Green's reason for restraining the other prisoner. The use of pepper spray was not excessive under the circumstances. Green has failed to state an excessive force claim.

9

### iii. Racial Discrimination

Green alleges that Medill's use of pepper spray was racially discriminatory. In order to state an race-based equal protection claim, a plaintiff must sufficiently allege that the defendant was motivated by racial animus. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269 (10th Cir. 1989) (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977)). Green offers no evidence to support his claim of racial discrimination other than the assertions that he is African-American, Medill is Caucasian, and that the other prisoner is not African-American. Green's conclusory allegation of racial motivation is insufficient to state a claim upon which relief can be granted. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts need not accept as true a pro se litigant's conclusory allegations). Mere differences in race do not, by themselves, support an inference of racial animus. Cf. Iadimarco v. Runyon, 190 F.3d 151, 156 (3d Cir. 1999) (holding that the fact that the individual responsible for a hiring decision was of a different race than the non-selected plaintiff does not establish a case of racial discrimination); Ford v. Wilson, 90 F.3d 245, 248 (7th Cir. 1996) (holding that an arbitrary traffic stop coupled with a difference in race between the person stopped and the officer does not establish a case of racial discrimination). Green has failed to state a racial discrimination claim. The district court properly dismissed Green's constitutional claims.

10

*C.     State Law Claims*

The district court construed Green's complaint as alleging state law tort claims. In its order advising Green that his complaint was subject to dismissal, the district court stated that Green's claims "are not shown to amount to anything more than a claim of mere negligence or tortious misconduct." ROA at 21. The court explained that Green would need to establish diversity jurisdiction in order for the court to have the power to adjudicate such claims. Id. Accordingly, the district court stated that Green "shall be given time to provide information as to his State citizenship . . . ."[6] Id. at 21-22. In response, Green filed a Statement of Diversity Jurisdiction, in which he alleges that complete diversity exists because his domicile is Missouri.[7] Id. at 27. However, the district court then concluded that Green "presents no evidence that his alleged injuries would entitle him to damages of $75,000 or more, so as to meet that statutory prerequisite for diversity jurisdiction," and dismissed Green's claims. Id. at 32 (Order dated July 8, 2010).

The district court erred in two ways. First, the district court's order

---

[6] The citizenship of CCA and Medill is not in the record on appeal. Upon remand, it remains Green's burden to establish all of the requirements for diversity jurisdiction.

[7] "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile." Smith v. Cummings, 445 F.3d 1254, 1259-60 (10th Cir. 2006). And, "[b]ecause domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state." Id. at 1260.

11

advising Green that his claims were subject to dismissal did not inform Green that his allegation regarding the amount in controversy — his request for $450,000 in actual and punitive damages — was deficient. Thus, Green could have reasonably concluded that he only needed to establish complete diversity of citizenship in order to cure the deficiencies regarding his state law claims. However, the district court ultimately dismissed his claims based on the amount in controversy. The district court erred by dismissing Green's state law claims based on a deficiency which the court had not previously identified. Second, the district court holds Green to too high of a burden regarding the alleged amount in controversy. The plaintiff in a diversity suit does not need to present evidence that he is necessarily entitled to over $75,000 in damages. Rather, dismissal is justified only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." St. Paul. Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Therefore, when the amount in controversy is challenged, the plaintiff "must show that it does not appear to a legal certainty that [he] cannot recover at least" the jurisdictional amount. Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994). Green was not afforded the opportunity to make that showing. To the extent that Green's complaint alleges state law tort claims, dismissal of those claims based on an inadequately-pled amount in controversy was in error.

12

*D. Post-Judgment Motions*

Green's post-judgment motions consisted of new arguments, new factual assertions, reiteration of arguments previously made to the district court, and attempts to assert new claims. The district court did not abuse its discretion in denying these motions.

For the foregoing reasons, the district court decision is affirmed in part and reversed in part. The district court's dismissal of Green's <u>Bivens</u> claims is affirmed, and the district court's dismissal of Green's state law claims for lack of subject matter jurisdiction is reversed. This case is remanded for further consideration of any state law claims in Green's complaint. Green's motion to proceed on appeal <u>in</u> <u>forma</u> <u>pauperis</u> is granted, and he is reminded of his continuing obligation to make partial payments towards his filing fee until it is paid in full.

Entered for the Court

Mary Beck Briscoe
Chief Judge